**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

```
┌─────────────────────────────────────┐
│ UNITED AMERICAN, INC.,              │
│                                     │
│                 Plaintiffs,         │
│                                     │
│         v.                          │                Civil Action
│                                     │                No. 03-1988
│ N.B.C.-U.S.A. HOUSING, INC.         │
│ TWENTY SEVEN, *et al.*,             │
│                                     │
│                 Defendants.         │
│                                     │
└─────────────────────────────────────┘
```

**MEMORANDUM OPINION**

Plaintiff, United American, Inc., brings this action to recover damages from Defendant N.B.C.-U.S.A. Housing, Inc. Twenty Seven ("N.B.C.-U.S.A. Housing") in a contract dispute over the construction of low-income housing for the elderly.  Plaintiff also joins the United States Department of Housing and Urban Development ("HUD") as a co-defendant claiming that N.B.C.-U.S.A. Housing was acting on behalf of HUD and that HUD has been unjustly enriched because of its and N.B.C.-U.S.A. Housing's actions.  HUD has moved to dismiss under Federal Rule of Civil Procedure ("FRCP") 12(b)(1) asserting that Congress has not waived the government's immunity from suit in this court.  Alternatively, HUD moves under FRCP 12(b)(6) to dismiss for Plaintiff's failure to state a claim for which relief can be granted.  Because the court agrees that Congress has not waived HUD's immunity from suit before this court,

HUD's motion to dismiss is granted.

**BACKGROUND**

Pursuant to 12 U.S.C. § 1701q (2000) ("Section 1701q"), HUD is responsible for "assist[ing] private nonprofit corporations, limited profit sponsors, consumer cooperatives, or public bodies or agencies to provide housing and related facilities for elderly or handicapped families." To this end, HUD is authorized to provide capital grants to private nonprofit organizations to fund the housing construction. Id.; 24 C.F.R. §§ 891.100, 891.170(a).

In exercising its authority, HUD allocates a budget for all field offices to expend on projects within their jurisdictions. 24 C.F.R. § 791.401. When allocations are made, HUD publishes a Notice of Funding Availability in the Federal Register, id., after which, interested eligible parties compete for grants. The winners receive grants which are interest free and for which repayment is not required so long as the housing remains available for the intended beneficiaries. Id.

To assure that housing continues to be available for the intended beneficiaries, the grants cannot be repaid to extinguish the housing requirement. Id. In addition, HUD requires a note and a mortgage on the project, a use agreement, a Capital Advance Agreement ("Agreement"), and a regulatory agreement to insure the HUD's interest in the capital advance. 24 C.F.R. §§ 891.170. As is relevant here, the Agreement exists by and between the owner and

Case No. 03-1988                                                    Page 3

the Secretary of HUD.  The construction contractor is not a direct party to the Agreement.  The Agreement further requires that construction follow the designs approved by HUD and that any alteration receive HUD's prior approval.

On June 9, 1997, HUD entered into such an Agreement with Defendant N.B.C.-U.S.A. Housing to construct and manage a senior citizen housing complex known as Upshur House in Washington D.C. Def. Mot. Dismiss or Summ. J. at 5.  N.B.C.-U.S.A. Housing, in turn, entered into a construction contract with Plaintiff on September 8, 1997. Compl. at 3.[1]

Although the construction contract envisioned that the project would be substantially completed by December 23, 1998, the project was delayed by 652 days.  Compl. at 5.  Plaintiff contends that these delays were because of, <u>inter alia</u>, defective design documents provided by the defendants, the defendants' unreasonable delays in processing requisitions, and the defendants' failure to obtain the contractually required builder's risk insurance. <u>Id.</u> at 4-5.  These delays, according to Plaintiff, resulted in damages including increased subcontractor costs and uncompensated loss due to vandalism and theft. <u>Id.</u>

Plaintiff avers that N.B.C.-U.S.A. Housing is "a single asset

---

[1] Because this case arises on a motion to dismiss, all of Plaintiff's well-pleaded facts are deemed true in considering HUD's motion to dismiss. <u>See, e.g.,</u> <u>Summit Health, Ltd. v. Pinhas</u>, 500 U.S. 322, 325 (1991).

Case No. 03-1988                                                    Page 4

entity created solely for the purpose of constructing the Upshur House project." Plaintiff claims that it normally would not have entered into a contract with N.B.C.-U.S.A. Housing but for the backing of HUD. Id. at 8. Plaintiff alleges that "[b]ecause N.B.C.-U.S.A. is a single asset entity, and because of HUD's superior lien position on the property," Plaintiff is obligated to complete the project without being provided the financial means of so doing. Id. Accordingly, under Plaintiff's theory, "HUD has [] been enriched by obtaining the value of [P]laintiff's services in furtherance of the Capital Advance Program under a contract which specifically promises to reimburse the [P]laintiff's costs for construction plus a reasonable profit." Id.

## DISCUSSION

As HUD is an agency of the Federal government, see 42 U.S.C. § 3531 et. seq., an action against HUD must satisfy all the requirements for actions commenced against the United States, FDIC v. Meyer, 510 U.S. 471, 475 (1994) ("Absent a waiver, sovereign immunity shields the Federal government and its agencies from suit."). "In any suit in which the United States is a defendant, there must be a cause of action, subject matter jurisdiction, and a waiver of sovereign immunity." Presidential Garden Assocs. v. United States, 175 F.3d 132, 139 (2d Cir. 1999); see also V S L.P. v. HUD, 235 F.3d 1109, 1112 (8th Cir. 2000), First Vir. Bank v.

Randolph, 110 F.3d 75, 77 (D.C. Cir. 1997), Trans-Bay Eng'gs & Builders, Inc. v. Hills, 551 F.2d 370, 376 (D.C. Cir. 1976). Although the same provision of law may satisfy more than one of these requirements, see, e.g., Trans-Bay Eng'gs & Builders, Inc., 551 F.2d at 376, each of these requirements is "wholly distinct" and, therefore, must be separately considered, Blatchford v. Native Village of Noatak, 501 U.S. 775, 786-87 n.4 (1990). In this case, Plaintiff has properly asserted that its claim falls under the court's federal question jurisdiction. Trans-Bay Eng'gs & Builders, Inc., 551 F.2d at 377-78 & 378 n.17, C.H. Sanders Co., Inc. v. Bristol Constr. Corp., 903 F.2d 114, 119 (2d Cir. 1990) ("We hold that the district court had federal question jurisdiction over Sanders' second cause of action, arising under federal common law and the statute authorizing the loan. 12 U.S.C. § 1701q."). Nevertheless, because a waiver of sovereign immunity is a "prerequisite for jurisdiction," a plaintiff must also demonstrate such a waiver to perfect this court's jurisdiction for claims against the Federal government. United States v. Mitchell, 463 U.S. 206, 212 (1983), United States v. Sherwood, 312 U.S. 584, 586 (1941). Therefore, Plaintiff must demonstrate that Congress has waived HUD's sovereign immunity in order for this court to entertain jurisdiction over its cause of action.

Plaintiff claims such a waiver is found in Title 12 Section 1702 ("Section 1702"). That provision provides, in relevant part:

> The Secretary shall, in carrying out the provision of this subchapter and subchapters II, III, V, VI, VII, VIII, IX-B and X of this chapter, be authorized, in his official capacity to sue and be sued in any court of competent jurisdiction, State or Federal.

Plaintiff argues that this provision waives the United States' sovereign immunity for any action arising from the National Housing Act. Under Plaintiff's theory, because the Secretary's authority to "provide assistance to private nonprofit organizations and consumer cooperatives to expand the supply of supportive housing for the elderly" is derived from Title 12 Section 1701q, Section 1702's waiver extends to Plaintiff's cause of action.

Although "sue or be sued" clauses are "liberally construed," see United States v. Nordic Village, Inc., 503 U.S. 30, 34 (1992), Franchise Tax Bd. of Cal. v. U.S. Postal Serv., 467 U.S. 512, 517-19 (1984), Reconstruction Fin. Corp. v. J.G. Menihan Corp., 312 U.S. 81, 84-85 (1940), FHA v. Burr, 309 U.S. 242, 244-46 (1939), waivers of immunity must "'not [be] "enlarge[d] . . . beyond what the language requires.'" Ruckelshaus v. Sierra Club, 463 U.S. 680, 685 (1983) (quoting E. Transp. Co. v. United States, 272 U.S. 675, 686 (1927), States v. Shaw, 309 U.S. 495, 502 (1940) ("It is not [a court's] right to extend the waiver of sovereign immunity more broadly than has been directed by Congress."); cf. Caminetti v. United States, 242 U.S. 470, 485 (1917) ("[T]he sole function of the courts is to enforce [the statute] according to its terms."). As the language instructs, Section 1702 authorizes the Secretary to

"sue and be sued" when "carrying out the provisions of [subchapter I] and subchapters II, III, V, VI, VII, VIII, IX-B, X-B." However, Section 1701q is codified in a section of Title 12 appearing prior to, and not a part of, subchapter I. Therefore, Section 1701q is not contained in any of the enumerated subchapters. To contend that a provision not expressly enumerated is still covered by this language would render the enumeration superfluous. Because it is a "cardinal principle of statutory construction" that no parts of a statute's text should be rendered superfluous, TRW Inc. v. Andrews, 534 U.S. 19, 31 (2001) (quoting Duncan v. Walker, 533 U.S. 167, 174 (2001)), Section 1702 cannot provide a waiver of sovereign immunity for the Secretary's actions taken pursuant to Section 1701q.

The canon of surplus usage is complemented, in this case, by the rule of expressio unius est exclusio alterius which directs that "the mention of some implies the exclusion of others not mentioned." United Dominion Indus. v. United States, 532 U.S. 822, 836 (2001). The court ought not, and does not, find the omission of Section 1701q from the enumeration to be without significance. Cf. Barnhart v. Peabody Coal Co., 537 U.S. 149, 168 (2003) (the canon expressio unius is best applied when "the items expressed are members of an 'associated group or series,' justifying the inference that items not mentioned were excluded by deliberate choice, not inadvertence.").

   Nor does the fact that 1702 references "this chapter" counsel that the "sue or be sued" clause extends to all of Chapter 13 of Title 12.  By enumerating specific subchapters <u>of the chapter</u> to which the "sue or be sued" provision extends, Congress intentionally did not include all parts of the chapter.  Indeed, the reference to "the chapter," here and elsewhere,[2] demonstrates that Congress knows how to express itself when it intends to include the entire chapter within the purview of a certain provision.  <u>Cf.</u> <u>Jama v. Immigration and Customs Enforcement</u>, 125 S. Ct. 694, 700 (2005) ("We do not lightly assume that Congress has omitted from its adopted text requirements that it nonetheless intends to apply, and our reluctance is even greater when Congress has shown elsewhere in the same statute that it knows how to make such a requirement manifest."); <u>Sosa v. Alverez-Machain</u>, 124 S. Ct. 2739, 2754 n.9 (2004).  Therefore, by consequence of Congress' failure to include the part of Title 12 which contains Section 1701q, the "sue and be sued" clause cannot reasonably be read to extend to Plaintiff's cause of action.

   This result is confirmed by tracing the histories of Sections 1701q and 1702.  "To encourage improvement in housing standards and conditions, to provide a system of mutual mortgage insurance, and

---

   [2]For example, the first line of Section 1702 reads: "The powers conferred by this chapter shall be exercised by the Secretary of Housing and Urban Development (hereinafter referred to as the "Secretary")."

Case No. 03-1988                                                      Page 9

for other purposes," Congress enacted the National Housing Act, 48 Stat. 1246, 1246 (1934) in 1934. Current Section 1702 can trace its origins to Title I, Section 1, of that act which provided for the creation and empowerment of a "Federal Housing Administrator." Id. The National Housing Act did not provide that the Administrator could sue or be sued in exercising his or her authorities under the National Housing Act. Rather, that authority was added the following year when Congress amended Title I, Section 1, mandating that "[t]he Administrator shall, in carrying out the provisions of this title and titles II and III, be authorized in his official capacity, to sue and be sued in any court of competent jurisdiction, State or Federal." See Banking Act of 1935, 49 Stat. 684, 722 (Section 344(a)), FHA v. Burr, 309 U.S. 242, 245 (1940). Neither Act, however, had a provision to specifically provide support for housing the elderly.

To provide such programs, Congress passed the Housing Act of 1959, 73 Stat. 654, 667 (1959), see C.H. Sanders Co. v. Bristrol Constr. Corp., 903 F.2d 114, 120 (2d Cir. 1990), which aimed to "assist private nonprofit corporations [in providing] housing and related facilities for elderly families and elderly persons." Id. at 665. Whereas parts of the Housing Act of 1959 amended the National Housing Act itself,[3] Section 202 (the progenitor of

---

[3] See, e.g., Housing Act of 1959, § 201(a), 73 Stat. at 665 ("Title II of the National Housing Act is amended by adding, after section 230 (as added by section 114) the following new

Section 1701q) was approved as a separate and distinct measure without any reference to its incorporation of the duties or obligations of the National Housing Act.  Nor did its enacting statute state that it would become part of any titles, let alone, those enumerated under Section 1.  <u>Id.</u>  Instead, Section 202 provided its own authorization which directed: "In the performance of . . . the functions, powers, and duties vested in him by this section, the Administrator shall . . . have the functions, powers, and duties set forth in section 402 . . . of the Housing Act of 1950."  <u>See</u> Housing Act of 1950, § 202(b), 73 Stat. at 667.  In turn, Section 402(c)(3) of the Housing Act of 1950 had its own "sue or be sued" provision.  Housing Act of 1950, § 402(c)(3), 64 Stat. 48, 79 (1950).  As this history demonstrates, Section 1701q was never part of the National Housing Act and operated independently thereof from its inception.

     If the statutory language of Section 1701q(b) had remained unchanged from 1959, the court would agree with the Second Circuit's conclusion that "the secretary's immunity to suit in the district court has been waived" because  Section 1701q "vest[ed] in the Secretary 'the functions, powers, and duties set forth in section 402 of the Housing of 1950.'  Section 402 contain[ed] a 'sue and be sued clause.'"  <u>C.H. Sanders Co.</u>, 903 F.2d at 120

---

section:").

(quoting 12 U.S.C. § 1701q);[4] see also Ammcon, Inc. v. Kemp, 826 F. Supp. 639, 642 (E.D.N.Y. 1993). But the winds of change have modified the statutory landscape since the Housing Act of 1959 and C.H. Sanders Co. Significantly, Congress enacted the Cranston-Gonzales National Affordable Housing Act in 1990 ("Cranston-Gonzales") which amended Section 1701q. See 104 Stat. 4079, 4297 (1990). As is relevant here, Cranston-Gonzales eliminated Section 1701q's incorporation of Section 402, and therefore, the duties and obligations pertaining thereto.[5] Accordingly, Congress expressly removed the waiver provision upon which the Second Circuit relied in C.H. Sanders Co. and which provided that HUD could "sue or be sued" in exercising its functions under Section 1701q. Because Section 1701q was never incorporated into the National Housing Act, and because Congress deleted Section 1701q's incorporation of Section 402, there remains nothing in either the National Housing Act or the Housing Act of 1959, which waives the government's immunity from suit for actions taken pursuant to Section 1701q.

Despite the textual shortcoming of its argument, Plaintiff directs the court to cases which have found a waiver of sovereign

---

[4]The court noted that the plaintiff also advanced an alternative argument. Because the court found the previously discussed argument convincing, it declined to identify the alternative argument or address it. Id. at 120.

[5]Importantly, Cranston-Gonzales transformed Section 1701q from a "loan program," see 73 Stat. at 667, to a grant program, see 104 Stat. 4079, 4297.

immunity for the Secretary's actions taken pursuant to Section 1701q and other provisions in Section 1701 to 1701z-15. As noted above, in C.H. Sanders Co. v. Bristrol Constr. Corp., 903 F.2d 114, 120 (2d Cir. 1990), for example, the Second Circuit did find that Section 1701q itself provided a waiver of sovereign immunity. However, as explained above, Congress has since amended Section 1701q to withdraw the government's waiver of immunity on which the C.H. Sanders Co. court based its decision. Consequently, Plaintiff's reliance thereon is misplaced.

Plaintiff's reliance on Pennsylvania v. Lynn, 501 F.2d 848, 852 (D.C. Cir. 1974) is also unavailing. In Lynn, Plaintiffs brought an action against HUD under three statutory provisions: 12 U.S.C. §§ 1701s, 1715z, and 1715z-1. In rejecting the government's immunity claim, the court held that 12 U.S.C. § 1702 "provide[d] in part that 'the Secretary shall, in carrying out the provisions of [subchapter II of chapter 13, title 12] be authorized to sue and be sued' . . . . Both the [§ 1715z] and [§ 1715z-1] programs are established under subchapter II of chapter 13, title 12." Pennsylvania v. Lynn, 501 F.2d 848, 851 n.11 (D.C. Cir. 1974); see also Bor-Son Bldg. Corp. v. Heller, 572 F.2d 174, 176 (8th Cir. 1978) (waiver of sovereign immunity extends to Sections 1715k & 1715z-1); S.S. Silberblatt, Inc. v. E. Harlem Pilot Block, 608 F.2d 28 (2nd Cir. 1979) (waiver of sovereign immunity extends to Section 1715z-1); Trans-Bay Eng'gs & Builders, Inc., 551 F.2d at 370

Case No. 03-1988                                                    Page 13

(same); Van-Tex, Inc. v. Pierce, 703 F.2d 891, 891 (waiver of immunity extends to Section 1715l(d)(4)). As this language suggests, the Court of Appeals implicitly rejected that Section 1702 extends to subchapters not explicitly enumerated, i.e., 12 U.S.C. § 1701s.

So why then did the Court of Appeals find a waiver of immunity for plaintiffs' Section 1701s claim? The Court of Appeals adopted the district court's legal conclusions on this score. Id. ("We reject both arguments on the basis of the opinion below."). Plaintiffs in Lynn were seeking to compel the Secretary to perform his statutory duties. Not only did the district court (correctly as indicated by the Court of Appeals) find that the "doctrine of sovereign immunity [was] inapplicable [because] Plaintiffs allege that the Defendants' actions were beyond the scope of their statutory authority," Pennsylvania v. Lynn, 362 F. Supp. 1363, 1368 (D.D.C. 1973) (citing Dugan v. Rank, 372 U.S. 609, 621-622(1963); Larson v. Domestic & Foreign Commerce Corp., 337 U.S. 682, 689-690(1949)), but also that the claims were cognizable under the Administrative Procedure Act which waives sovereign immunity for non-monetary damage claims, id.; cf. Reno v. Am.-Arab Anti-Discrimination Comm., 525 U.S. 471, 510 n.4 (Souter, J. dissenting), Lane v. Pena, 518 U.S. 187, 196 (1996). Plaintiffs' theory in this case does not appropriately hinge on either of these considerations because it, "in essence," seeks monetary damages

from HUD.  See Megapulse, Inc. v. Lewis, 672 F.2d 959, 968 (D.C. Cir. 1982).  Therefore, when coupled with the Court of Appeals' implicit rejection of Plaintiff's theory advanced here, Plaintiff's reliance on Lynn is misplaced.

As a last resort, Plaintiff contends that HUD represented that its actions in question here were taken pursuant to Section 202 of the Housing Act of 1959, and, therefore, "[i]t is disingenuous for the Government to now try to argue that the Section 202 program in fact is not part of the National Housing Act."  See Pl.'s Opp. at 8.  Notwithstanding this argument's tension with the history of the national housing acts, the argument cannot help Plaintiff here.  It is well-established that "[a] waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text."  Lane v. Pena, 518 U.S. 187, 192 (1996) (emphasis added); see also Office of Pers. Mgmt. v. Richmond, 496 U.S. 414, 424-25 (1990) (a party make not collect monetary damages under the theory of estoppel), United States v. N. Y. Rayon Imp. Co., 329 U.S. 654, 658-59 (1947) ("in the absence of constitutional requirements, interest can be recovered against the United States only if express consent to such a recovery has been given by Congress."), United States v. Shaw, 309 U.S. 495, 501 (1940) (no waiver of sovereign immunity for cross-claims beyond the amount necessary for a set off without a specific statutory consent); Carr v. United States, 98 U.S. 433, 438 (1879) (collateral estoppel could not be applied as

against the government because "whosoever would institute such proceedings must bring his case within the authority of some act of Congress."); Presidential Gardens Assocs. v. United States, 175 F.3d 132, 140 (2d Cir. 1999) (holding that settlement agreements with HUD did not waive sovereign immunity). Consequently, HUD may not waive the government's immunity through its actions unless expressly authorized by Congress. As explained above, because any representation HUD made that its actions were taken pursuant to Section 1702 (as opposed to Section 1701q) would have been ultra vires, i.e., outside of its authority, under the facts alleged, any such representation cannot waive HUD's immunity. V S L.P. v. HUD, 235 F.3d 1109, 1113 (8th Cir. 2000).

Plaintiff does not assert an alternative statutory basis for the government's waiver of sovereign immunity. Congress waives immunity under specified conditions (such as the timing of when an action may be brought or in what court such an action may be commenced) and through different pieces of legislation, see e.g., Lane v. Pena, 518 U.S. 187, 196 (1996), United States v. Sherwood, 312 U.S. 584, 586 (1941), Minnesota v. United States, 305 U.S. 382, 388 (1939); Plaintiff has not demonstrated such a waiver here. Notwithstanding the fact that jurisdiction may be a difficult issue, it is the Plaintiff's job to plead a basis of jurisdiction,

Case No. 03-1988                                                      Page 16

not the court's to find it.[6]

## CONCLUSION

For the foregoing reasons, Defendant HUD's motion to dismiss for lack of subject matter jurisdiction is **GRANTED**.

/S/ Donald C. Pogue
DONALD C. POGUE
UNITED STATES DISTRICT JUDGE[7]

Dated:    November 2, 2005
          New York, New York

---

[6]Plaintiff insists that the Court of Federal Claims does not recognize equitable claims for unjust enrichment. Pl.'s Br. at 16. Since it is Plaintiff's burden to ask the court to transfer a case, V S L.P. v. HUD, 235 F.3d at 1113, Gunn v. USDA, 118 F. 3d 1233, 1240 (8th Cir. 1997), and Plaintiff has argued that the Court of Federal Claims does not have jurisdiction over non-contractual claims for unjust enrichment, that the court will not consider whether transfer is appropriate.

[7]The Honorable Judge C. Pogue of the United States Court of International Trade sitting by designation.